**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| WILLOW INNOVATIONS, INC.<br><br>*Plaintiff,*<br><br>v.<br><br>CHIARO TECHNOLOGY LTD.,<br><br>*Defendant.* | Civil Action No. 2:23-cv-00229-JRG<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF WILLOW'S REPLY IN SUPPORT OF ITS
OPENING CLAIM CONSTRUCTION BRIEF**

## TABLE OF CONTENTS

Page

I. CONSTRUCTION OF TERMS COMMON TO MULTIPLE PATENTS ....................... 2

    A. "pump mechanism" terms ................................................................................... 2

        1. *Elvie fails to rebut the presumption that "pump mechanism" is not subject to § 112(f)* .................................................................................. 2

        2. *Elvie disregards the dispositive intrinsic evidence* .................................. 4

        3. *The extrinsic evidence when considered in its entirety supports plain and ordinary meaning, and not Elvie's contrived construction* ...................................................................................... 6

    B. "the suction force and the milk flow path both being directed generally upward relative to the bottom portion of the flange" ('816 Patent, Claim 1) / "milk extracted from the breast flows to the collection container upwardly through the milk flow path relative to a bottom of the breast contacting structure" ('228 Patent, Claim 11) ...................................................... 8

    C. "contained within" ('624 Patent, Claim 1; '619 Patent, Claim 1; '229 Patent, Claim 1) / "contained completely within" ('816 Patent, Claim 1) .......... 10

II. CONSTRUCTION OF '005 PATENT CLAIM TERMS ................................................. 11

    A. "pump mechanism comprises two drivers that displace a flexible member to generate vacuum pressure." ('005 Patent, Claim 1) ......................................... 11

    B. "the breast pump automatically senses letdown" ('005 Patent, Claim 2)............ 11

    C. "chassis" ('005 Patent, Claim 1) ............................................................... 12

III. CONSTRUCTION OF '229 PATENT CLAIM TERMS ................................................. 12

    A. "a latch suction is maintained throughout the pumping session" ('229 Patent, Claim 1) ................................................................................................... 12

IV. CONSTRUCTION OF D'995 PATENT CLAIM TERMS ............................................. 13

    A. "The ornamental design for a breast pump, as shown and described" (D'995 Patent, Claim 1) ....................................................................................... 13

        1. *Elvie fails to show ambiguities in the figures* ......................................... 13

        2. *Mr. Fletcher's verbal description is unnecessary and interjects ambiguity* .................................................................................................. 15

V. CONSTRUCTION OF D'625 PATENT CLAIM TERMS ............................................. 15

    A. "The ornamental design for a breast pump, as shown and described" (D'625 Patent, Claim 1) ....................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apple Inc. v. Masimo Corp.*,
  2024 WL 137336 (Fed. Cir. Jan. 12, 2024) .................................................................................. 6

*Baldwin Graphic Sys., Inc. v. Siebert, Inc.*,
  512 F.3d 1338 (Fed. Cir. 2008) ................................................................................................. 13

*Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*,
  796 F.3d 1312 (Fed. Cir. 2015) ................................................................................................. 15

*Finjan, Inc. v. Secure Computing Corp.*,
  626 F.3d 1197 (Fed. Cir. 2010) ................................................................................................... 8

*Greenberg v. Ethicon Endo–Surgery, Inc.*,
  91 F.3d 1580 (Fed. Cir. 1996) ................................................................................................ 2, 3

*Mondis Tech, Ltd. v. LG Elec., Inc.*,
  No. 2:08-CV-478-TJW-CE, 2011 WL 2149925 (E.D. Tex. May 5, 2011) ................................. 8

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
  521 F.3d 1351 (Fed. Cir. 2008) ................................................................................................... 8

*Personalized Media Communs., L.L.C. v. ITC*,
  161 F.3d 696 (Fed. Cir. 1998) ..................................................................................................... 3

*Thorner v. Sony Comput. Ent'mt Am. LLC*,
  669 F.3d 1362 (Fed. Cir. 2012) ................................................................................................. 12

*Williamson v. Citrix Online LLC*,
  792 F.3d 1339 (Fed. Cir. 2015) ................................................................................................... 2

Elvie's response misinterprets the scope of Willow's patent claims by inappropriately focusing on extrinsic evidence, such as infringement contentions and selective excerpts from lab notebooks and inventor emails, to suggest that the claims are limited to only one specific type of "peristaltic" pump disclosed in the specification.  This interpretation, however, disregards the actual claim language (which does not specify "peristaltic" pumps or "compressible tubes with actuators"), and overlooks the broader teachings of the patent specifications (which expressly teach a POSA that the claims are directed to other types of pumps) and the prosecution history (which shows that the examiner understood and applied a claim scope that was not so limited).

Furthermore, Elvie's criticism of Willow for not presenting an expert to define the plain and ordinary meaning of the claims is unfounded.  Intrinsic evidence is the most authoritative source in claim construction, and in this case, it alone suffices to clarify the claim scope.  Elvie's reliance on extrinsic evidence is further undermined by the deposition of its own expert, Dr. Stone, who admitted to disregarding parts of the specification that clearly show the claims are not limited to peristaltic pumps.  Ex. K at 118:3-16 (disregarding these teachings because they are "***not relevant to what a peristaltic pump is***").

Elvie's assertion that Willow's patents do not encompass diaphragm pump architecture is contradicted not only by the intrinsic evidence but also Dr. Stone's testimony.  Despite Elvie's claim that Dr. Stone's opinions stand unchallenged, his deposition contradicts Elvie's narrow interpretation of "pump mechanism" (one that he disagrees with in any event).  Ex. K at 135:9-136:16.  Indeed, he concedes—as he must—that a POSA would recognize that only a few different types of breast pumps were available to a POSA, including diaphragm and piston pumps, and more so, admitted that a POSA would readily understood their "application" (i.e.,

1

how to make and use these pumps in the context of wearable pumps).

Finally, Elvie's response brief also fails to counter the years of prosecution history of Willow's patents, which faced rejections based on prior art that disclosed diaphragm and other types of pump mechanisms. Dr. Stone concedes—as the prosecution record is clear—that Willow did not limit, disclaim, or disavow the broader claim scope for its "pump mechanism" at any time. *Id*. at 48:19-49:1, 113:11-17. Elvie's remaining arguments on the other terms fail for the similar reasons—they improperly attempt to introduce unfounded language or non-restrictive embodiments into their proposed interpretations.

## I. CONSTRUCTION OF TERMS COMMON TO MULTIPLE PATENTS

### A. "pump mechanism" terms[1]

#### 1. *Elvie fails to rebut the presumption that "pump mechanism" is not subject to § 112(f)*

Means-plus-function under § 112(f)—a framework suggested by Dr. Stone because he saw it once before (*id*. at 97:4-98:2)—does not apply to these terms which do not recite "means for" language. Notably, Elvie fails to cite any authority finding that the claim language here invokes § 112(f). Dkt. 82 at 6-8. Elvie also fails to distinguish *Greenberg v. Ethicon Endo–Surgery, Inc.*, where the Federal Circuit held that the term "detent mechanism" was not a means-plus-function term because "detent … **as the name for structure**, has a reasonably well understood meaning in the art." 91 F.3d 1580, 1583 (Fed. Cir. 1996). Here, "pump" falls in the same category—and Dr. Stone acknowledged that a POSA would understand that a "pump mechanism" refers to a "pump." Ex. K at 107:2-10; *see Williamson v. Citrix Online LLC*, 792 F.3d 1339, 1348 (Fed. Cir. 2015) (the essential inquiry under § 112(f) is whether "the words of the claim are understood by persons of

---

[1] The "pump mechanism" terms refer to "a pump mechanism" ('229 Patent, claim 1); "a pumping mechanism" ('816 Patent, claim 1; '624 Patent, claim 1; '005 Patent, claim 1) / "a vacuum pumping mechanism" ('619 Patent, claim 1).

2

ordinary skill in the art to have a sufficiently definite meaning as the name for structure"). And while a "pump" is well understood to a POSA (Ex. K at 107:2-10, 107:12-108:15), Elvie resorts to more extrinsic evidence to argue that their dictionary definition of "pump" is insufficient because it uses "another nonce word, 'device.'" Dkt. 82 at 6. But the same was true in *Greenberg*, where the definition of "detent" was "a part of a ***mechanism*** (as a catch, pawl, dog, or click) that locks or unlocks a movement." 91 F.3d at 1583. Like the "pump" at issue here, *Greenberg* noted that "[m]any devices take their names from the functions they perform," including "filter," "brake," "clamp," "screwdriver," and "lock," but that is nevertheless "[in]sufficient to convert a claim element containing that term into a 'means for performing a specified function.'" *Id*.

Elvie's contention that Willow's construction is "extraordinarily broad[]" (Dkt. 82 at 7) is belied by Dr. Stone's testimony, who admitted that (1) only a limited number of pumps were known in the art (diaphragm, piston, centrifugal, and peristaltic pumps), (2) the universe of pumps appropriate for use in a breast pump was even more limited, and (3) their "applications" (i.e., how to make and use them) were also well understood by a POSA. Ex. I, Stone Decl. ¶ 23; Ex. K at 107:12-108:15. Elvie's brief, as it must, concedes this point. Dkt. 82 at 6 ("[A] POSA reviewing the claims and specification of the asserted patents would not have understood 'pumping mechanism' to contemplate incorporating any and every 'pump' known at the time into Willow's in-bra, wearable breast pump."). Thus, based on Elvie's and Dr. Stone's own admissions, the class of available structures for the claimed pumping mechanism was as limited as it was well understood. At bottom, the claims do not invoke § 112(f). *See Personalized Media Communs., L.L.C. v. ITC*, 161 F.3d 696, 705 (Fed. Cir. 1998) (finding "detector" sufficiently structural because "[e]ven though the term 'detector' does not specifically evoke a particular structure, it does convey to one knowledgeable in the art a variety of structures known as 'detectors.'").

Elvie also fails to address the fatal inconsistency in its 112(f) positions based on the prosecution of its own claim term, "*mechanical* or *magnetic* mechanism." Dkt. 82 at 8. First, Elvie asserts that Willow's "pump mechanism" refers to the system as a whole (whatever that means), whereas Elvie's mechanism is a smaller component of an overall system. *Id.* That is irrelevant, however, to the threshold issue of whether § 112(f) should apply. There is no question that "mechanical mechanism" (which common sense dictates is redundant) provides less structure (and maybe no structure at all) to a POSA as compared to a "pump" or "pumping" or "vacuum pumping" mechanism, which conjures one of only a few different types. Ex. K at 103:15-105:1. Accordingly, how can Elvie credibly argue here that Willow's "pump mechanism" invokes means-plus-function when it told the Patent Office that its own "mechanical mechanism"—two "nonce" words to borrow from Elvie's argument—does not?

Next, Elvie points to surrounding context from claim 30 of Elvie's '151 Patent as disclosing structure, even though it refers to function. Dkt. 82 at 8. Taken at face value, however, Elvie's basic premise in pointing to structure within the claim supports why 112(f) should ***not*** apply to Willow's "pump" mechanism—Willow's claims contain structure, i.e., the "pump," "pumping," and "vacuum pumping" in "pump mechanism." *See* Ex. A at 50:65-51:2; Ex. D at 53:19-21.

### 2. *Elvie disregards the dispositive intrinsic evidence*

Elvie argues that Willow's "sole evidence of intrinsic support comes from the one-time use of 'equivalent.'" Dkt. 82 at 8-9. Not so. While Elvie is fixated on its foregone conclusion that Willow's pump mechanism is limited to only a cylindrical, compressible tube, Willow's patents unambiguously teach in numerous instances that the claimed pump mechanism is not so limited:

- "pumping regions 40, 42 [of tube 32] do not need to be in the shape of a cylindrical tube, ***or even a tube at all, but can be any volume shape that be changed/compressed***. For example, the cross-section could be oval, square, trapezoid, etc. as needed to fit the device space." (Ex. D at 12:2-5)

4

Indeed, Dr. Stone admitted at his deposition that diaphragm pump assembly "includes a volume that can be changed or compressed." Ex. K at 26:8-11. That testimony alone is fatal to Elvie's proposed construction.

- "[A]lthough both portions 32S and 32L [of flex-tube 32] are shown as tubular portions being circular in cross-section, *the present disclosure is not limited to such, as one or both portions could be shaped otherwise.*" (Ex. A at 17:31-34)

Dr. Stone ignored this express teaching.

- "[T]he **conduit region 32L in the embodiment of FIG. 3 is not cylindrical**, but is formed as a pump chamber having a substantially oval face 32F and walls that extend substantially perpendicular thereto." (Ex. A at 17:35-38)

Dr. Stone again ignored this express teaching to a POSA that the pumping mechanism includes types of pumps other than a peristaltic pump.

- "Like regions 32S and 32L, region 32S2 **may be cylindrical and circular in cross section, but need not be**." (Ex. A at 17:46-47)

Again, Dr. Stone ignores this express teaching because it does not support his conclusory opinions.

- "***[T]he present disclosure is not limited to [a tubular shape].***" (Ex. C at 9:49-52).

In sum, these express disclosures inform a POSA that the claims cover the limited world of pumps.

Moreover, Elvie's contention that Willow's patents disclose "variations of peristaltic pump systems, and no other pump type," (Dkt. 82 at 9) is belied by Dr. Stone's admission that a diaphragm pump "includes a volume that can be changed or compressed," which is an express teaching in the specification. Ex. K at 26:8-11; *see* Ex. D at 12:2-5 ("pumping regions 40, 42 [of tube 32] do not need to be in the shape of a cylindrical tube, or even a tube at all, but can be ***any volume shape that be changed/compressed***").

Critically, Elvie still has not made—and cannot make—any argument that Willow disclaimed or disavowed any claim scope that would narrow its claims to only a peristaltic-type pump (i.e., one comprised with compressible tubes). While Elvie cites Willow's amendment of

5

the specification during prosecution (Dkt. 82 at 10), which has no bearing to the claim scope, Elvie fails to mention that the examiner cited prior art diaphragm pumps, including Khalil, as disclosing Willow's claimed pump mechanism. Ex. 5 at 0208-0209; Ex. K at 101:3-9. Elvie similarly fails to cite to one instance where Willow amended its claims or otherwise argued its pump does not include diaphragm or piston-type pumps. Dkt. 82 at 10.

Elvie's reliance on *Apple Inc. v. Masimo Corp.*, 2024 WL 137336, at *3 (Fed. Cir. Jan. 12, 2024), is misguided. There, the court limited the scope of the claimed "processing characteristics" to "one or more signals from one or more detectors configured to detect [light]" because the claim language did not permit a broader scope. *Id*. As the court noted, "[the recited] signals represent the only signals received and processed in the claimed patient-monitoring invention." *Id*. (citing claim 1 of Masimo's '703 patent). Here, by contrast, Willow's claims are agnostic to the specific type of pump mechanism and do not support Elvie's narrow reading.

Finally, Elvie's response fails entirely to address Willow's argument that Elvie's imported unclaimed limitations would cause redundancies in the claims. *See* Dkt. 75 at 8. Elvie's construction would import "upward flow" into the claims of the '229, '005, '624, and '619 Patents when no such requirement is claimed. In addition, "upward flow" under Elvie's proposal would be recited twice in claim 1 of the '816 Patent. *See id*.

### 3. *The extrinsic evidence when considered in its entirety supports plain and ordinary meaning, and not Elvie's contrived construction*

Because they have no support in terms of intrinsic evidence, Elvie doubles down on highly selected portions of attorney-collated extrinsic evidence and Dr. Stone's reliance on it. But the sliver of cited extrinsic evidence tells only Elvie's side of the story, not what happened during Willow's pioneering R&D of the first-ever discrete, wearable, under-the-bra breast pump, and the broad patenting around it. Dr. Stone admitted at his deposition that he was given only discrete

6

excerpts from only one inventor notebook. Ex. K at 40:15-42:19. He did not know there were other inventor notebooks, nor did he seem to care, because as before, his attorneys had found one excerpt that disclosed a peristaltic pump that supported his opinions. *Id*. But one excerpt from one lab notebook in isolation is of little probative value.

Even a quick glance at other communications between the inventors show they had possession of other pump designs, including a diaphragm pump. For example, one email discusses a "piston design[]" that is not limited to a peristaltic architecture, *see* Ex. 7 at WLLW-ELV-00314715, and diaphragm pumps are also disclosed in a different inventor's lab notebook—one that Dr. Stone was not asked to review. Dkt. 82 at 10-11; Ex. K at 40:15-42:15. Exemplary images from Exhibit N showing a diaphragm (also called a membrane) are reproduced below. Ex. N at 6049, 6062.



The Willow inventors' goal was to claim the pump mechanism broadly—as evidenced by the claim language itself. Nowhere is "peristaltic" or "diaphragm" or "piston" used in the claims. Elvie fails to rehabilitate Dr. Stone on these shortcomings (Ex. K at 118:3-16, 130:2-131:1) and Elvie's argument that these "do not disclose an entirely re-designed invention comprising a new pump system," Dkt. 82 at 12, fails in view of the proper standard by which to analyze intrinsic evidence in its entirety as understood by a POSA. In any event, as discussed above, Dr. Stone admitted that Willow's patents disclose a diaphragm pump to a POSA. Ex. K at 26:8-11.

    **B.**    **"the suction force and the milk flow path both being directed generally upward relative to the bottom portion of the flange" ('816 Patent, claim 1) / "milk extracted from the breast flows to the collection container upwardly through the milk flow path relative to a bottom of the breast contacting structure" ('228 Patent, claim 11)**

On upward flow, Elvie resorts to irrelevant arguments based on Willow's infringement contentions.[2] But "claim construction is intended to be decided based on the intrinsic evidence and to a lesser extent the extrinsic evidence—neither of which depend on the infringement positions or infringing products." *Mondis Tech, Ltd. v. LG Elec., Inc.*, No. 2:08-CV-478-TJW-CE, 2011 WL 2149925, at *3 (E.D. Tex. May 5, 2011). In any event, Elvie cannot justify a departure from the plain and ordinary meaning at claim construction by disputing Willow's infringement theory and relying on *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.,* 521 F.3d 1351, 1361 (Fed. Cir. 2008). *O2 Micro* merely holds that plain and ordinary meaning "may be inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute." *Id*. Whereas here, with upward, there is only one "ordinary" meaning consistent with the claim language, the Court can resolve the parties' dispute by rejecting Elvie's unsupported construction. *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1206-07 (Fed. Cir. 2010) (distinguishing *O2 Micro* after noting the district court properly rejected defendant's "unjustifiably narrow" construction).

Once again, Dr. Stone's deposition testimony supports Willow's position, and Elvie conspicuously fails to address the fatality of the testimony to its position. Dr. Stone rightfully distinguished between upward ***relative to the bottom of the flange*** (per the claims), as compared to upward ***relative to gravity*** (his opinion outside the claims and specification). According to Dr.

---

[2] Willow strongly disagrees that its infringement theories are "bizarre," as Elvie contends. Dkt. 82 at 2. The suction force in the Elvie Pump is generated by the diaphragm, which sits above the nipple tunnel. *Id*. at 14. Thus, the suction force and the milk flow path are necessarily upward, even when the pump is oriented upright.

8

Stone, "up and down are *relative terms related to gravity*, but the drawings relate instead to direction *with regard to the bottom of the flange*." Ex. K at 55:9-19. The claim language consistent with the specification controls and the terms are clear—upward movement is determined *relative to the bottom portion of the flange*. Ex. A at 50:45-51:2; Ex. F at 51:17-27. In response, Elvie argues that rotation of the device "would read out the claim language 'bottom portion' and 'bottom' because the bottom in one orientation would no longer be the bottom in the rotated orientation." Dkt. 82 at 14-15. But that is simply wrong and contrary to Dr. Stone's testimony, which correctly recognizes that the top and bottom of the device are always fixed—thus, the key reference point (i.e., bottom portion of the flange) remains fixed even if the device is rotated, *e.g.*, when the user is pumping while lying on her back. Ex. K at 76:2-20.

Elvie further argues that if "when upright" is not read-in to the definition then the claim terms are indefinite, but as Willow's opening brief stated, "Elvie's alternative indefiniteness argument is moot because according to Dr. Stone, any indefiniteness position depends on 'Willow assert[ing] 'upward' is not governed by the 'top' and 'bottom' orientations (i.e., upward is towards the 'top').'" Dkt. 75 at 10 n.5. Willow again agrees with Dr. Stone on this point—the claim requires upward movement relative to the bottom of flange, which does not change. Ex. K at 55:9-19, 57:2-18, 76:2-20.

Elvie further fails to explain why "when upright" is necessary (it is not) or how it is consistent with the specifications' teachings (again, it is not). Indeed, insertion of "when upright" directly contradicts the specifications' teachings that pumping may occur in non-upright positions, including "when the user is lying down, bending over, or in environments such as a bumpy ride, as in an automobile or airplane trip." Ex. B at 32:27-37. Further demonstrating the flaws in Elvie's proposed construction, its own experts interject ambiguity into their proposed construction by

9

disagreeing on what "when upright" means. While Elvie falsely blames "Willow's extensive efforts to confuse this concept with muddled hypotheticals," Dkt. 82 at 16, Elvie cannot credibly claim its experts' opinions are "unrebutted" when the experts disagree with each other.

Finally, Elvie's response fails to address the numerous other issues Willow raised with Elvie's construction, including:

- Elvie improperly seeks to import the "the suction force and the milk flow path" into claim 11 of the '228 Patent, despite that claim 11 recites neither a "suction force" nor a "milk flow path." (Dkt. 75. at 11);

- Elvie arbitrarily substitutes the words "lower end" for the claimed "bottom portion," even though the substitution is unnecessary and reduces clarity (*id*.); and

- Elvie substitutes the words "away from" for "relative to," even though "relative to" is easily understood and "away from" introduces unnecessary confusion (*id*. at 12).

### C. "contained within" ('624 Patent, claim 1; '619 Patent, claim 1; '229 Patent, claim 1) / "contained completely within" ('816 Patent, claim 1)

Elvie's response does not explain (1) why plain and ordinary meaning is insufficient, or (2) why "contained within" and "contained completely within" should be construed together despite their different language. Elvie's proposal should be rejected as a threshold matter because it would render "completely" as a claim term superfluous.

The prosecution history does not dictate a different result. There, Willow distinguished prior art reference Khalil on the basis that it failed to disclose a "pump mechanism and milk collection container … contained within the main body," as claimed in claim 1 of the '229 Patent. Dkt. 82 at 16-17. Willow distinguished the examiner's proposal—formulated under the broadest reasonable interpretation regime—that "contained within" should mean "resting on a surface of the main body 34 or contoured to fit with the main body 34." Ex. 11 at 4133. Instead, Willow argued, the pump mechanism and milk collection container must be "within the main body," which "simply means inside the main body." *Id*. On that basis, Willow further distinguished

10

arrangements where the "milk collection container [is] configured on an outside of a main body." *Id*. Willow thus distinguished Khalil because its container was "sized and shaped to reside on the exterior surface … of the breast pump system." *Id*. This description is consistent with Willow's cited dictionary definition of "contain" that means "to have within," as opposed to Elvie's proposal of "enclosed" which means "closed in or fenced off." Dkt. 75 at 13.

## II.     CONSTRUCTION OF '005 PATENT CLAIM TERMS

### A.     "pump mechanism comprises two drivers that displace a flexible member to generate vacuum pressure." ('005 Patent, claim 1)

Elvie fails to substantively argue this term, and instead merely cites its extrinsic declaration and rests on its flawed argument that the claims are limited to a compressible tube architecture. Dkt. 82 at 19. Elvie does not confront the multiple disclosures in Willow's specifications that the claimed "flexible member" is not limited to a compressible tube. *See* Ex. A at 9:49-52, 17:35-37, 17:46-47; Ex. C at 9:49-52; Ex. D at 12:2-5. Nor does it address that when referring to a diaphragm style pump, Dr. Stone acknowledges that a diaphragm is itself "flexible." Ex. K 120:12-20. Elvie also fails to address the claim differentiation and redundancy problem with its position—because this term is recited only in claim 1 of the '005 Patent, it should not be imported into the other claims which only recite a "pump mechanism."

### B.     "the breast pump automatically senses letdown" ('005 Patent, claim 2)

Elvie similarly glosses over this term, and merely cites its extrinsic declaration and Willow's extrinsic development documents. Dkt. 82 at 20. Elvie does not justify its departure from the plain meaning or explain why a specific embodiment involving a compressible tube should be imported into the claim. Nor does Elvie explain why the "pump mechanism" itself must sense letdown instead of the "breast pump" as a whole, as the claim requires. Ex. C at 28:42-43.

C.     **"chassis" ('005 Patent, claim 1)**

Elvie fails to justify its departure from the plain and ordinary meaning which seeks to exclude "the case or exterior of the device." The proper analysis must start with the presumption that Willow's claims are not limited to exemplary embodiments where Willow did not disclaim any claim scope or act as its own lexicographer. *Thorner v. Sony Comput. Ent'mt Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). Elvie does not make any disavowal or disclaimer argument.

Dr. Stone's opinion does not dictate a narrow construction. Indeed, Elvie asserts that the two dictionary definitions cited in Dr. Stone's report are not conflicting, but Elvie fails to explain how they are not. Dkt. 82 at 21. Indeed, one definition states that the "chassis" is "the supporting frame of a structure" and the other states that "the frame and working parts (of an automobile or electronic device) *exclusive of the body or housing*." Ex. I ¶ 107. This ambiguity alone is sufficient to reject Elvie's unduly narrow construction.

### III.   CONSTRUCTION OF '229 PATENT CLAIM TERMS

A.     **"a latch suction is maintained throughout the pumping session" ('229 Patent, claim 1)**

Elvie devotes its brief to arguing a point that is uncontested. Willow's opening brief agreed that "latch suction" means "a minimum vacuum level established when the pump is attached to the breast—i.e., a pressure which is below atmospheric pressure." Dkt. 75 at 20. Thus, the parties' dispute is limited to whether "throughout the pumping session" should be narrowed to "during the entire pumping session." It should not.

Elvie's brief is silent as to its justification for rewriting "throughout the pumping session" to read "during the entire pumping session." Elvie fails to acknowledge that (1) its design expert, Mr. Fletcher, used "throughout the pumping session" in his declaration, and (2) he understands "during the entire pumping session" to mean "constantly from start to finish." *Id*. at 20-21; Dkt.

12

82 at 22-24. Based on Elvie's failure to address this issue, the Court should maintain the claim language of "throughout the pumping session."

Elvie similarly fails to confront the claim language, which merely requires that "*a* latch suction" (meaning one or more) is "maintained throughout a pumping session." Ex. B at 53:22-23. It is telling that Elvie's brief consistently refers to "the latch suction" but that is not what the claim says. Indeed, Willow has not argued that "a latch suction" changes the underlying meaning of "latch suction." The parties maintain agreement on this point. Rather, Elvie excludes "*a*" from the term to be construed, and then by argument, would have this Court interpret a different claim term: "*the* latch suction." These claim terms, however, have different meanings. "The" means "one," whereas "a" means one or more. *See Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1342 (Fed. Cir. 2008). Indeed, the prosecution history supports this interpretation and not the mangled version Elvie posits.

Elvie's reliance on arguments made by Willow to overcome the prior art only show that *the* "latch suction" cannot be reduced to zero during a pumping session. Willow does not contest this point. Willow made clear through its argument in overcoming Khalil and others that its claim was ***not*** directed to a single latch suction, i.e., "the" latch suction—one that was maintained from the very beginning to the very end of the pumping session, but instead could have more than one latch suction (i.e., *a* latch suction).

## IV.   CONSTRUCTION OF D'995 PATENT CLAIM TERMS

### A.   "The ornamental design for a breast pump, as shown and described" (D'995 Patent, claim 1)

#### 1.   *Elvie fails to show ambiguities in the figures*

Elvie's response fails to show that Willow's figures are inconsistent. Figure 1 of the D'995 Patent is a perspective view and is not intended to show the same features from the same angle as

13

Figures 6-7, which Elvie admits are "front and rear views of a design for a breast pump in which its outer edges are shown in solid lines." Dkt. 82 at 25. But Elvie fails to confront Mr. Fletcher's testimony showing that the depictions of the outer edges of Figures 6 and 7 are consistent with the depictions of the outer edges in Figures 1-5 of the D'995 Patent.

Elvie alleges that Willow "misleadingly cites to Mr. Fletcher's deposition testimony about a hypothetical drawing that included a solid line," (*id.* at 26) but Mr. Fletcher's testimony speaks for itself. For illustrative purposes only, Willow converted Figure 2's dashed line into a solid line to highlight the defects with Mr. Fletcher's declaration. Ex. L at 53:16-21. Willow explained the annotation, which directed, not misled Mr. Fletcher, who testified that (1) he understood the dashed line annotated in red to mean that the front portion of the breast pump must extend at least to that dashed line; (2) he understood the front portion of the breast pump may extend beyond the dashed line annotated in red; and (3) consistent with Figure 6, the "intersection" (annotated below in blue ink) between the extended portion and the outer edge of the breast pump would be seen as a solid line. *Id.* at 52:20-54:5, 54:18-56:13. Thus, although certain boundaries are depicted as dashed lines in Figures 1-5, the depictions are consistent with the depiction of the outer edge as shown in Figures 6-7. *See* Ex. L at 58:15-59:12; Ex. S.



FIG. 2

14

### 2. Mr. Fletcher's verbal description is unnecessary and interjects ambiguity

Elvie wrongly accuses Willow of misleading Mr. Fletcher. But Elvie cannot defend his admission that he failed to consider *any* alternative designs. Ex. L at 99:6-13. That fact alone is sufficient to support a finding that Willow's design is ornamental, not functional. *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1330 (Fed. Cir. 2015). Elvie's argument that Willow fails to counter with expert testimony falls flat—these are publicly available products and are cited in Willow's claim construction tutorial.[3]

Elvie further fails to explain the basis for including "oval" in its construction, when Mr. Fletcher does not know what it means. Ex. L at 103:2-6. Willow's point is not that oval means egg-shaped, but rather that Mr. Fletcher's verbal description introduces more confusion than it purports to resolve. Mr. Fletcher acknowledged that a capsule and an egg shape—which are ovals under common definitions—are not oval under his definition. *Id*. at 102:2-14.[4]

## V. CONSTRUCTION OF D'625 PATENT CLAIM TERMS

### A. "The ornamental design for a breast pump, as shown and described" (D'625 Patent, claim 1)

The verbal description of the D'625 Patent suffers the same deficiencies described above. Elvie fails to acknowledge that unlike the D'995 Patent, the D'625 Patent does not claim the back portion of the breast pump, and thus the claimed design does not even have the alleged "rounded bottom surface that curves until it meets the flat rear surface."

---

[3] Elvie fails to respond to Willow's argument that Mr. Fletcher's proposed verbal description does not describe the surface that meets the "flat rear surface." Dkt. 75 at 26; Dkt. 82 at 27-29. Mr. Fletcher wants to encourage factfinders to notice "that the claimed design has a rounded bottom surface that curves until it meets the flat rear surface," (Ex. J ¶ 73) but his description does not even account for that surface. *See* Ex. R.

[4] Finally, Elvie does not address the problem with including the "flat upper area" in the verbal description. As Mr. Fletcher identified, the area on the top surface is not flat, but instead has a slight upward curve to it. Dkt. 75 at 26 (citing annotated Fig. 4).

Date: August 29, 2024						Respectfully submitted,


							/s/ Timothy S. Durst

							**O'MELVENY & MYERS LLP**
							Timothy S. Durst (TX #00786924)
							tdurst@omm.com
							Cason Garrett Cole (TX #24109741)
							ccole@omm.com
							2801 North Harwood Street, Suite 1600
							Dallas, TX 75201
							Telephone: (972) 360-1900
							Facsimile: (972) 360-1901

							Robert F. Shaffer (admitted *pro hac vice*)
							rshaffer@omm.com
							Jason Fountain (admitted *pro hac vice*)
							jfountain@omm.com
							Miao Liu (admitted *pro hac vice*)
							mliu@omm.com
							1625 Eye St., NW
							Washington, DC 20006
							Telephone: (202) 383-5300
							Facsimile: (202) 383-5414

							Carolyn S. Wall (admitted pro hac vice)
							cwall@omm.com
							1301 Avenue of the Americas
							Suite 1700
							New York, NY 10019-6022
							Telephone: (212) 326-2000
							Facsimile: (212) 326-2061

							Laura Burson (TX # 24091995)
							lburson@omm.com
							400 South Hope St
							Los Angeles, CA 90071
							Telephone: (213) 430-6000
							Facsimile: (213) 430-6407

							***Attorneys for Plaintiff Willow Innovations, Inc.***

16

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic services are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on August 29, 2024.

/s/ <i>Timothy S. Durst</i>